UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
CBS BROADCASTING INC.,
                                    :
                Plaintiff,
                                    :          **MEMORANDUM DECISION**
            - against -
                                    :          05 Civ. 10620 (DC)
BRENT JONES and BRENT JONES, INC.,
                                    :
                Defendants.
                                    :
- - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/2/06
```

**APPEARANCES:**     ANTHONY M. BONGIORNO, ESQ.
                     MARY CATHERINE WOODS, ESQ.
                     Attorneys for Plaintiff
                     51 West 52nd Street
                     New York, New York  10019

                     DREIER LLP
                     Attorneys for Defendants
                         By:  Andrew J. Bernstein, Esq.
                              M. Alexis Pennotti, Esq.
                     499 Park Avenue
                     New York, New York  10022

**CHIN, D.J.**

        In this case, defendant Brent Jones ("Jones"), a former
Pro Bowl NFL player who played tight end for the San Francisco
49ers from 1987 to 1998, agreed to provide on-air analysis and
related services to plaintiff CBS Broadcasting Inc. ("CBS")
pursuant to a written contract (the "Agreement").  The Agreement
provided that, for 2005, Jones was to be paid $200,000, in
accordance with CBS's payroll practices, at the rate of 1/52nd of
$200,000 per week.

In September 2005, however, three games into the regular season, Jones resigned.  CBS sues, contending that it should receive a refund of all compensation it paid Jones for 2005, above the 3/17ths of $200,000 he earned for calling three games.

Jones and defendant Brent Jones, Inc. ("BJI") move for judgment on the pleadings, arguing that: (1) CBS is not entitled to any additional relief for defendants' breach of contract, as CBS has exercised its sole remedy of terminating payment to defendants, and (2) CBS's unjust enrichment claim must be dismissed as a matter of law because a valid, enforceable contract exists.  For the reasons that follow, defendants' motion is granted in part and denied in part.

<u>**BACKGROUND**</u>

**A.   <u>Facts</u>**

As alleged in the amended complaint, the facts are as follows:

In 1998 CBS and BJI entered into the Agreement under which BJI was to provide the services of Jones as an on-air analyst for NFL games.  (Compl. ¶ 5; Agmt. ¶ 1(a)).[1]  The original Agreement extended through February 15, 2003.  (Agmt. ¶ 3(a)).  In January 2003, the Agreement was extended to 2006.  (Amen. Agmt. ¶ 2).  Jones stopped performing his obligations on

---

[1]   References to "Compl." are to the Amended Complaint filed on December 13, 2005 in the Supreme Court of New York; to "Agmt." to the Agreement incorporated by reference through the Amended Complaint; and to "Amen. Agmt." to the letter from CBS to Brent Jones, Inc. dated January 22, 2003 amending the Agreement.

September 29, 2005, without completing the contract year.  CBS
ceased payment at that time.  (Compl. ¶¶ 9-10).

Paragraph 1(a) of the Agreement provides that Jones was
to provide services as "an On-Air Analyst and in related
capacities in connection with National Football League game and
studio coverage and any related NFL programs and/or coverage."
(Agmt. ¶ 1(a)).  Paragraph 1(b) explains that CBS and Jones will
"negotiate in good faith regarding appropriate additional
compensation to be paid" if any services other than those
detailed in paragraph 1(a) are requested.  (Id. ¶ 1(b)).
Paragraph 6 details a list of services that Jones must provide
at CBS's request, including attendance at "rehearsals, program
conferences, seminars, press conferences, publicity photographic
sessions, sales promotion meetings, affiliate meetings and
conventions, trade shows and other events and functions." (Id.
¶ 6).

CBS began compensating Jones for the 2005 contract year
on February 13, 2005.  (Compl. ¶ 8).  The Agreement provided
that payment was to be made "in accordance with CBS's payroll
practices."  (Agmt. ¶ 4).  Specifically, for the eighth contract
year, the contract year in question, payment was to be made at
the rate of "1/52nd of Two Hundred Thousand Dollars ($200,000)
per week." (Amen. Agmt. ¶ 5).  Thus, the Agreement provided
that Jones was to be paid on a weekly basis.  By the time Jones
breached, CBS had paid him for approximately eight months of the
year.

On September 29, 2005, Jones abruptly resigned, refusing to honor the remainder of the Agreement because he was not pleased with the negotiations for future years.  (Compl. ¶¶ 9-10).  As of his resignation, Jones had provided on-air services for only three games of the NFL 2005 season.  (Id. ¶ 11).  The Agreement does not reference the number of football games Jones was expected to call each year, nor does it contain a provision for the return of any payment to CBS in the event Jones terminated the Agreement prematurely.  Rather, paragraph 19 of the Agreement provides in relevant part that: "If Contractor or Artist at any time materially breaches any provision of this Agreement . . . CBS may . . . reduce Contractor's compensation pro rata, and/or CBS may, by so notifying Contractor during or within a reasonable time after such period, terminate this Agreement."  "[P]ro rata" is not defined.

Jones also sought and received reimbursement for unauthorized travel and entertainment expenses in violation of CBS policy, including charges for personal goods and services unrelated to any business purpose.  (Id. ¶ 13).  A number of these items were charged to the corporate American Express card issued to him by CBS.  (Id.).  In addition, Jones did not surrender the American Express card upon his departure from CBS and continued to use it for his personal benefit.  (Id.).  The Agreement expressly covers the subject matter of travel and expenses.  It references the Travel Policy in paragraph 4(c) and explains that Jones was obligated "to perform services in full

- 4 -

compliance with the Travel Policy, including, without limitation, any provision of said Travel Policy relating to deadlines applicable to expenses accounting."

B. **Procedural History**

On October 27, 2005 CBS filed a complaint in the Supreme Court of New York, County of New York. (Notice of Removal ¶ 2). CBS filed an amended complaint on December 13, 2005. (<u>Id.</u> ¶ 3). On December 19, 2005 defendants removed the case to this Court, based on diversity of the parties. (<u>Id.</u> ¶¶ 8-11). CBS is incorporated and has its principal place of business in New York. (<u>Id.</u>). Jones is a California citizen and BJI is a California corporation with its principal place of business in California. (<u>Id.</u>). Accordingly, this Court has diversity jurisdiction.

This motion followed.

<u>**DISCUSSION**</u>

Defendants make two arguments in support of their motion for judgment on the pleadings: (1) CBS's breach of contract claim must be dismissed because CBS has already exercised its sole remedy of terminating payment to Jones for defendants' breach of the Agreement; and (2) CBS's unjust enrichment claim must be dismissed as a matter of law because a valid and enforceable contract exists between the parties. First, I discuss the standard for judgment on the pleadings. Second, I discuss defendants' arguments in support of their motion.

A.     **Standard for Judgment on the Pleadings**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is analyzed under the same standard as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  Accordingly, judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief. See id.  In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, and matters subject to judicial notice.  See Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

B.     **Breach of Contract**

CBS alleges that Jones breached the Agreement by calling only three of the seventeen games in the 2005 NFL season.  Thus, CBS argues that Jones is only entitled to 3/17ths of his $200,000 salary, and should be reimbursed for any amounts paid above that for the 2005 contract year.  Defendants do not dispute that Jones breached the Agreement; rather, they argue that CBS has already exercised its sole remedy for a breach of contract -- i.e., by terminating further payments to Jones -- and that reimbursement is not a remedy available to CBS.

1.   **Applicable Law**

In a contract case, the court's "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). Accordingly, a court first must determine whether the language of the contract is ambiguous. See Morse/Diesel, Inc. v. Trinity Indus., Inc., 67 F.3d 435, 443 (2d Cir. 1995). Contractual language is unambiguous if it has "a definite and precise meaning," and "there is no reasonable basis for a difference of opinion" as to its interpretation. Sayers v. Rochester Tel. Corp. Supplemental Mgt. Pension Plan, 7 F.3d 1091, 1094-95 (2d Cir. 1993) (quoting Breed v. Ins. Co. of North America, 413 N.Y.S.2d 352, 355 (1978)); see Lucente v. IBM Corp., 310 F.3d 243, 257 (2d Cir. 2002). Conversely, contractual language is ambiguous if a reasonably intelligent and objective person who considers the language in the context of the entire agreement and who is aware of the general customs, practices, usages, and terminology of the industry can reach more than one interpretation. Nowack v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996); Space Imaging Europe, Ltd. v. Space Imaging L.P., 38 F. Supp. 2d 326, 334 (S.D.N.Y. 1999).

Moreover, "'[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations . . . . The court is not required to find the language ambiguous where the interpretation urged by one party would 'strain[] the contract language beyond its

- 7 -

reasonable and ordinary meaning.''"  Hunt Ltd. v. Lifschultz
Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir.1989) (quoting
Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459,
161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)).

     If the agreement sets forth the parties' intent
clearly and unambiguously, the court need not look to extrinsic
evidence to determine the parties' obligations under the
contract.  See Stroll v. Epstein, 818 F. Supp. 640, 643
(S.D.N.Y.), aff'd, 9 F.3d 1537 (2d Cir.1993); Teitelbaum
Holdings, Ltd. v. Gold, 421 N.Y.S.2d 556, 559 (1979).  If the
language of a contract is ambiguous, however, extrinsic evidence
of the parties' intent is admissible.  Space Imaging Europe,
Ltd., 38 F. Supp. 2d at 334 (citing Seiden Assocs., 959 F.2d at
428).

     **2.   Application**

     Here, the Agreement is not wholly without ambiguity.
It provides that in the event that Contractor or Artist
breaches, CBS may "reduce Contractor's compensation pro rata,"
but it does not define "pro rata."  Nonetheless, as between the
two competing interpretations before the Court, I conclude that
a reasonably intelligent and objective person could give the
Agreement only one interpretation -- that "pro rata" means a
proportion based not on the number of games called out of
seventeen, but rather, on the number of weeks out of the year
the Agreement was in effect.  I reach this conclusion for the
following reasons:

First, the express language of the Agreement undermines CBS's argument.  CBS explicitly agreed to pay Jones according to its regular payroll practices.  CBS further agreed to pay Jones, for the 2005 contract year, at the rate of 1/52nd of $200,000 per week.  Hence, the plain language of the Agreement suggests that "pro rata" was to be based on the number of weeks worked out of the year.

Second, the Agreement does not include any language to support CBS's position  There is no reference to the number of games that Jones was obligated to call per year.  Thus, there is no explanation for CBS's contention that Jones was obligated to call seventeen games, the number of games in the NFL's regular season.  Furthermore, there is no provision in the Agreement for reimbursement in the event of a breach by Jones.  The remedy set out in the Agreement is reduction and/or termination.  CBS, in accordance with the Agreement, terminated the contract at the time of breach.  If the parties had contemplated the extraordinary remedy of reimbursement in the case of a breach, they surely would have spelled that out in the Agreement.

Third, CBS's interpretation does not make sense.  The number of games was not specified.  There could have been more than seventeen games, including exhibition games, playoff games, and the Pro Bowl.  Also, Jones's obligations were not limited to calling games.  The Agreement references other duties, such as attending seminars, program conferences, and trade shows.

In short, the parties could not have intended that BJI would be paid on a weekly basis throughout the year, subject to

a refund if Jones did not call all the games.  If that had been
the parties' intention, they surely would have spelled that out
in the Agreement.  Accordingly, defendants' motion for judgment
on the pleadings is granted and the breach of contract claim is
dismissed.

### C.   Unjust Enrichment

Next, plaintiff argues that Jones was unjustly
enriched because (1) he was paid for work that he did not
perform, and (2) he was reimbursed for unauthorized personal
travel and entertainment expenses.  Defendants move for judgment
on the pleadings with respect to the unjust enrichment claim
because a valid and enforceable agreement exists between the
parties.

### 1.   Applicable Law

"To state a claim for unjust enrichment in New York, a
plaintiff must allege that (1) defendant was enriched; (2) the
enrichment was at plaintiff's expense; and (3) the circumstances
were such that equity and good conscience require defendants to
make restitution." Kidz Cloz, Inc. v. Officially for Kids,
Inc., 320 F. Supp. 2d 164, 177 (S.D.N.Y. 2004) (citing Astor
Holdings, Inc. v. Roski, No. 01 Civ. 1905(GEL), 2002 WL 72936,
*17 (S.D.N.Y. Jan. 17, 2002) (citing Louros v. Cyr, 175 F. Supp.
2d 497 (S.D.N.Y. 2001))).

Under New York law, however, "[t]he existence of a
valid and enforceable written contract governing a particular
subject matter precludes recovery in quasi-contract or unjust

- 10 -

enrichment for occurrences or transactions arising out of the same matter." Eagle Comtronics, Inc. v. Pico Products, Inc., 682 N.Y.S.2d 505, 506 (4th Dep't 1998) (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 521 N.Y.S.2d 653, 656 (Ct. App. 1987). On the other hand, where "there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, [a party] may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies." Leroy Callender, P.C. v. Fieldman, 676 N.Y.S.2d 152, 153 (1st Dep't 1998) (quoting Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 594 N.Y.S.2d 144, 146 (1st Dep't 1993)).

### 2.   **Application**

Here, there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract. Thus, defendants' motion to dismiss the unjust enrichment claim is granted, as plaintiff cannot recover under any theories of quasi-contract, except to the extent that the motion is denied as to the claim for refund of unauthorized expenditures.

Plaintiff argues that the unjust enrichment claim is permissible under the lenient provisions for alternative pleading under Rule 8(e)(2) of the Federal Rules of Civil Procedure. The cases that plaintiff cite to support its argument, however, offer no support because in each of those cases, the validity of the contract was at issue. See Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 621

- 11 -

(S.D.N.Y. 2003) (noting that whether or not a contract existed was yet to be decided); Cosmocom, Inc. v. Marconi Communs. Int'l, Ltd., 261 F. Supp. 2d 179, 187 (E.D.N.Y. 2003) (refusing to dismiss the claim because of possibility the contract was terminated before the plaintiff claimed the defendant was unjustly enriched).  To be clear, the alternative pleading rules may allow for an unjust enrichment claim where there is a question as to the validity or enforceability of a contract. Here, however, there is no question that a valid, enforceable contract exists.  Neither side contests this.  Accordingly, plaintiff's alternative pleading argument fails because the validity of the contract is not at issue.  Defendants' motion for a judgment on the pleadings on the unjust enrichment claim is granted, with the following exception.

The amended complaint alleges that Jones improperly charged certain personal expenses to CBS, through his corporate credit card and otherwise.  If any personal expenditures charged to CBS remain unpaid, Jones shall reimburse CBS.  The Court is hopeful that the parties can resolve this issue themselves.

D.    **Attorneys' Fees**

CBS's request for attorneys' fees is denied.

#### CONCLUSION

Defendants' motion for judgment on the pleadings is granted, except to the extent that CBS seeks reimbursement for personal expenditures charged on Jones's corporate credit card. If the parties cannot resolve the remaining claim for refund of

personal expenditures, they shall appear for a pretrial
conference on December 1, 2006 at 11 a.m.  Otherwise, judgment
will be entered dismissing the complaint with prejudice and
without costs or fees.

SO ORDERED.

Dated:    New York, New York
          November 2, 2006

DENNY CHIN
United States District Judge

- 13 -